**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RALPH BOOZER,**

       **Plaintiff,**       **CIVIL ACTION NO. 15-cv-12129**

  **v.**

**COMMISSIONER OF**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Ralph Boozer seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff also filed a response to Defendant's Motion. (Docket no. 21.) With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 18.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

**I.**       **PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits on August 24, 2012, alleging disability beginning January 16, 2011 due to cervical herniated discs, bulging

discs in lower back, depression, and anxiety and panic attacks. (TR 194.) The Social Security Administration denied Plaintiff's claims on December 13, 2012, and Plaintiff requested a *de novo* hearing. (TR 17, 21.) On November 14, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Scott M. Staller. (TR 36-74.) Plaintiff agreed to amend his alleged onset date to November 16, 2011, the date on which he was below the SGA threshold, at the hearing; however, the amended on-set date is not reflected in the ALJ's decision. (TR 21, 38-39.) In the February 19, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 21-31.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## II.     HEARING TESTIMONY AND MEDICAL EVIDENCE

In his brief, Plaintiff sets forth the procedural history of this matter as well as a summary of the medical record and his hearing testimony. (Docket no. 14 at 3-11.) The ALJ set out a detailed, factual recitation of Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision. (TR 24-31.) Defendant adopts the ALJ's recitation of the medical facts. (Docket no. 15 at 2.) There are no material inconsistencies between Plaintiff's and the ALJ's accounts of the record, with the exception of the ALJ's omission of any discussion of Plaintiff's treating psychiatrist, Dr. William Pettit. Accordingly, the undersigned will incorporate these factual recitations by reference but has conducted an independent review of Plaintiff's medical record and the hearing transcript and will also include comments and citations as necessary throughout this Opinion and Order.

2

### III. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the original alleged onset date of January 16, 2011,[1] and that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, a depressive disorder, an anxiety disorder and a pain disorder. (TR 23.) The ALJ determined that Plaintiff's ailments of bicepital tendonitis and elbow contracture were non-severe impairments. (TR 23.) The ALJ also found that Plaintiff's severe impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 24-25.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to dangerous moving machinery, unprotected heights, excessive vibrations, and extreme cold. He would be able to understand, remember, and carry out simple instructions, and he could make judgments on simple work related decisions. The claimant should have no contact with the public, and he could have only occasional contact with co-workers and supervisors. He should have a low stress job defined as having only occasional decision making and only occasional changes in the work setting. The claimant would be able to maintain attention and concentration for 2 hour segments over an 8 hour period, and he could complete a normal work week without interruptions from psychologically or physically based symptoms.

(TR 25.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 30-31.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 16, 2011, through the date of the decision. (TR 31.)

### IV. LAW AND ANALYSIS

---

[1] The decision reflects the originally asserted on-set date despite Plaintiff's attempt to amend it to November 16, 2011, the first date he acknowledged that his activity fell below the SGA threshold.

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)

(citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be remanded under sentence four because (1) the ALJ committed reversible error by failing to note the weight assigned to, or even mention, the opinions of Dr. Pettit, Plaintiff's treating psychiatrist; (2) the ALJ erred by according little weight to the opinion of Plaintiff's treating physician, Dr. Siddiqui; and (3) the RFC issued by the ALJ is inconsistent with the objective medical evidence. (Docket no. 14 at 12-18.)

**1. Dr. Pettit**

First, the Court will address Plaintiff's claims of error with regard to the ALJ's assessment, or lack thereof, of Dr. Pettit's opinion. Dr. Pettit is a psychiatrist at Herrick Medical Center, who treated Plaintiff from January to August 2012. (TR 518-543.) As Plaintiff asserts and Defendant concedes in their respective briefs, the ALJ does not mention Dr. Pettit's treatment, records or opinions in his decision. (TR 21-31, Docket no. 14 at 12, Docket no. 15 at 3.) Plaintiff argues that the ALJ's failure to address Dr. Pettit's treatment and opinions of Plaintiff alone justifies a remand in this case. (Docket no. 14 at 12-13.)

It is well settled that the opinions of treating physicians are generally accorded substantial deference. The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). A failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reason for giving that opinion less than controlling weight. *See id*. at 376-77.

This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted). "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart*, 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole,* 661 F.3d at 939 ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from

ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

It is quite clear from the decision in the case at bar that the ALJ did not provide the mandated "good reasons" for the weight assigned to Dr. Pettit's opinion because the ALJ did not assign any weight to Dr. Pettit's opinion. In fact, the ALJ makes no mention Dr. Pettit, his treatment of Plaintiff or his opinions relating to Plaintiff's mental impairments. (TR 21-31.)

Defendant argues the ALJ's omission amounts to harmless error because the only opinion expressed by Dr. Pettit was that Plaintiff was totally disabled from all employment, which is not a medical opinion but rather a statement on an issue reserved to the Commissioner. As such, Defendant maintains that Dr. Pettit's opinion would not be entitled to controlling, or any weight at all. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). (Docket no. 15 at 4.) Nevertheless, medical opinions, defined as statements reflecting the physician's judgments on the nature and severity of a claimant's impairments and how they impact his functionality, *see* 20 C.F.R. §404.1527(a)(2), appear throughout Dr. Pettit's treatment record. (TR 518-543.) For example, in February 2012, Dr. Pettit noted that Plaintiff appeared disheveled, was "quite distraught" and displayed "marked agitation." His mood was anxious, depressed and frightened and his thought process was tangential and circumstantial. He expressed transient suicidal and homicidal ideation, as well as hopelessness, helplessness and ideas of persecution. Finally, Dr. Pettit notes that Plaintiff was overwhelmed and had slept less than six hours in the eight days preceding his appointment. (TR 525-526.) Another note relates that despite medication for general anxiety, Plaintiff experienced four panic attacks in three weeks. (TR 528.) Because Dr. Pettit's treatment notes reflect his judgment on the nature and severity of Plaintiff's condition and how his condition impacts his ability to function, they should have been assessed as the treating

physician's opinion. The absence of any discussion of Dr. Pettit's treatment of Plaintiff is a clear failure to provide good reasons for discounting the opinion's weight, thereby compelling a remand. *See Gayheart*, 710 F.3d at 376.

## 2. Dr. Siddiqui

Plaintiff further asserts that the ALJ erred in assigning little weight to the opinion of Plaintiff's long-time primary care physician, Dr. Siddiqui. Plaintiff argues that the ALJ's rationale for discounting Dr. Siddiqui's opinion, specifically that it was inconsistent with the opinions of other treaters, the lack of radiculopathy symptoms and "findings of normal gait and lower extremity functions," does not amount to the "good reasons" necessary to justify discounting a treater's opinion. (Docket no. 14 at 17.)

Even if an ALJ determines that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.,* 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). Moreover, as discussed above, the Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376.

The ALJ in the instant matter did not provide good reasons for discounting Dr. Siddiqui's opinion, as they were not sufficiently specific to explain the reasoning behind the decision. *See*

9

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007). First, the ALJ justified the assignment of little weight to Dr. Siddiqui's opinion based on its inconsistency with "the generally mild limitations in range of motion that were noted by the treating providers…" (TR 28.) The ALJ does not identify which of the "treating providers" reached this conclusion. To the contrary, the ALJ notes elsewhere in the decision that Dr. Lazzara, Dr. Jacobs, and Dr. Buckingham, all consulting examiners, found Plaintiff had cervical range of motion reduced by as much as 25%. (TR 26.)

The ALJ next relied upon a "lack of consistent radicular symptoms," again without any specific corroboration from the record. Again, elsewhere in the decision, the ALJ noted that EMG testing in both 2011 and 2013 demonstrated acute on [sic] chronic radiculopathy involving the upper extremities. Mild motor peripheral neuropathy was noted in one EMG report and Dr. Clague, an evaluating neurologist, found that Plaintiff had weakness in both hands, as wells as decreased sensation along the right side of the neck into the right shoulder and down to the right elbow. (TR 26.)

Finally, the ALJ points to repeated findings of a normal gait and normal lower extremity functioning (without any direct citation to the record) as justification for discounting Dr. Siddiqui's opinions. (TR 26.) The ALJ does not, however, explain how these findings are inconsistent with Dr. Siddiqui's opinions regarding Plaintiff's manipulative limitations. The undersigned is not convinced that the ALJ's expressed reasons for discounting Dr. Siddiqui's opinions are supported by the evidence in the case record. In any event, the articulated reasons are not sufficiently specific to demonstrate to a subsequent reviewer the justification for discounting the opinions.

Defendant argues that the ALJ did provide adequate reasons for rejecting Dr. Siddiqui's opinions on Plaintiff's manipulative limitations and submits analysis and citations to the record in support of the ALJ's conclusions. (Docket no. 15 at 12-16.) But Defendant's post-hoc rationalization of the ALJ's assessment of Dr. Siddiqui's opinion does not cure the ALJ's failure to provide good reasons. *See Christephore.*, 2012 WL 2274328, at *6("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). Accordingly, a proper assessment of Dr. Siddiqui's opinion provides additional grounds for remand.

Because Plaintiff's RFC assessment will potentially change upon remand after proper consideration of Dr. Pettit and Dr. Siddiqui's opinions under the treating physician rule, the Court need not address Plaintiff's other claim of error in this Order.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **GRANTED IN PART**, and Defendant's Motion for Summary Judgment [15] is **DENIED**. On remand, the ALJ will address and consider the treatment notes and opinions of Drs. Pettit and Siddiqui in accordance with the treating physician rule.


Dated: September 28, 2016            s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: September 28, 2016      <u>s/ Lisa C. Bartlett</u>
                                                  Case Manager